# United States District Court

## For the

## Western District of New York

**24 CV   552**

ZAKKIYYA CARTER, as Pro Se )
         )
    Plaintiff )
         )
         )
    -V- )
         )
CITY OF BUFFALO,  SUICIDE )
PREVENTION AND CRISIS SERVICES )
INC, MIA SULLIVAN, JENNIFER )
HUBACHER,  ASHLEY WACZKOWSKI, )
DAWN FREEMAN )
ERIE COUNTY MEDICAL )
CENTER, ERIE COUNTY MEDICAL )
CENTER CORPORATION, LAURA )
HANRAHAN, MARK SUTTON, JULIA )
RINGLE, MARKEITH PRIDEGON, LAURA )
FLEMING, SHALONNA WATTS, ALICIA )
FLOOD, NICOLE ABRUZZINO, PAULA L.
FEROLETO AND JANE AND JOHN DOES
**ALL IN THEIR OFFICIAL AND UNOFFICIAL CAPACITIES**

42 U.S.C. 1983
Case No._____

PLAINTIFF'S INFORMATION:

ZAKKIYYA CARTER
C/O 280 STEVENS AVE
BUFFALO, NEW YORK [14215]
THAQUEEN6262@GMAIL.COM


DEFENDANTS INFORMATION ONE:

JOHN AND JANE DOES (E-DISTRICT LAW ENFORMENT)
(Collectively mentioned herein after as "E-District Officers")
CITY OF BUFFALO
65 NIAGAGRA SQUARE
LAW DEPARTMENT, FL 11
BUFFALO, NEW YORK 14202

DEFENDANTS INFORMATION TWO:

MIA SULLIVAN
JENNIFER HUBACHER
ASHLEY WACZKOWSKI
DAWN  FREEMAN
SUICIDE PREVENTION AND CRISIS SERVICES INC
(Collectively mentioned herein after as "Crisis Services")
(Employees to Crisis Services)
100 RIVER ROCK DR, SUITE 300
BUFFALO, NEW YORK 14207

DEFENDANTS INFORMATION THREE:

LAURA HANRAHAN
MARK SUTTON
MARKEITH PRIDGOEN
LAURA FLEMING
JANE AND JOHN DOE
(Employees to ECMCC)
ERIE COUNTY MEDICAL CENTER
ERIE COUNTY MEDICAL  CENTER COPORATION
462 GRIDER STREET
BUFFALO, NEW YORK 14215

DEFENDANTS INFORMATION FOUR:

JULIA RINGLE
(Former employee to ECMCC)
BESTSELF BEHAVIROL HEALTH
1050 NIAGARA STREET
BUFFALO, NEW YORK 14215

DEFENDANTS INFORMATION FIVE:

PAULA L. FEROLETO
SUPREME COURT JUDGE (ERIE COUNTY)
JANE AND JOHN DOES
25 DELAWARE AVENUE
BUFFALO, NEW YORK 14202

DEFENDANTS INFORMATION SIX:

NICOLE ABRUZZINO
DSS LIAISON FOR ERIE COUNTY MEDICAL CENTER
2875 UNION RD,  SUITE 356
CHEEKTOWAGA, NEW YORK

DEFENDANTS INFORMATION SEVEN:

ALICIA FLOOD
Private party

45 POPLAR AVENUE
BUFFALO, NEW YORK 14211
(EMPLOYEE TO CLINICAL STAFFING RESOURCES
EMAIL: info@clinicalstaffingresources.com)
DEFENDANTS INFORMATION EIGHT:

SHALONNA WATTS
Private party
630 STARIN AVENUE
BUFFALO, NEW YORK 14216

## COMPLAINT AND DEMAND FOR JURY TRIAL

1.     Plaintiff, Zakkiyya Carter, brings this action against Defendant/ CITY OF BUFFALO et al.,
and alleges, upon information, the record of previous proceedings, and belief and hereby submits
the following for consideration by this honorable Court.

## APPLICATION OF LIBERAL CONSTRUCTION

2.     Plaintiff Zakkiyya Carter appears here in her pro se status. As such, this Plaintiff
respectfully requests that her pleadings herein will be liberally construed by this honorable
Court, pursuant to the standards established by the Supreme Court of the United States in
Haines v. Kerner, 404 U.S. 519 (1972) (Holding that: " a pro se litigant's pleadings,
"however in artfully pleaded," are held to the most liberal of standards because pro se
litigants may be less capable of formulating legally-competent initial pleadings.)

## JURISDICTIONAL STATEMENT

3.     In accordance with 42 U.S. Code § 1983, this court has jurisdiction over claims alleging
violations of constitutional rights, including retaliation against the Plaintiff for exercising First
Amendment rights and participating in protected activities.

4.     Additionally, the Plaintiff invokes 42 U.S. Code § 1985, which address conspiracies to interfere with civil rights, and U.S. Code § 2000e-3(a), which prohibits retaliation under Title VII of the Civil Rights Act of 1964.

5.     Jurisdiction and venue is proper here pursuant to 28 U.S. Code § 1391 which provides in relevant part that "28 USC §1391. Except as otherwise provided by law—(1) this section shall govern the venue of all civil actions brought in district courts of the United States; and (2) the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature." (See, e.g., Monroe v. Pape, 365 U.S. 167 (1961) (holding that officials acting in abuse of their authority who deprive an individual of a constitutional right may be liable under § 1983.)(See also, Brown v. State of New York, 89 N.Y.2d 172, 674 N.E.2d 1129, 52 N.Y.S.2d 223 (1996). 2 N.Y. CONST. art. I, § 11.) In Brown, the New York Court of Appeals held that individuals may assert claims for compensatory damages for violations of their rights protected by the equal protection guarantees of the New York State Constitution.

6.     Venue is properly laid in the Western District of New York Pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated.

7.     Article III of the U.S. Constitution provides Federal Courts can hear all cases in law and equity arising under this Constitution, [and] the laws of the United States. The Supreme Court has interpreted this clause broadly, finding that it allows federal courts to hear any case in which there is a federal ingredient, see Osborn v. Bank of the United States, 22 U.S. 738 (1824)

8.     Plaintiff asserts that this court is appropriate as this complaint falls within this district's subject matter jurisdiction and seek damages from Defendants for injuries suffered from an alleged fraud involving state actors, the adjudication of and Plaintiff does not require the federal court to sit in review of any state court judgments.

9.     This court also has jurisdiction over these matters pursuant to U.S. code § 1030-Computer Fraud and Abuse Act (CFAA), 18 U.S. Code §2-Aiding and Abetting, 42 U.S Code § 1320d-6(a)(1)(C) et seq.- (HIPAA), 47 U.S. Code §233(a)(1)(d)-Stalking and Harassment, 42 U.S Code § 1395(dd)-Patients' Rights under Medicaid, U.S. Code § 2-Prinicpal Punishment for Principal Offense, 18 U.S.C. § 241 Conspiracy against Rights - District courts; and whatsoever rules, laws, regulations and Federal Rules of Civil Procedure may apply. The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

## NATURE AND CAUSE OF ACTION

11.     The plaintiff was unjustly targeted with retaliatory measures as a result of her involvement in activities protected by the First Amendment against external parties. She began to experience significant and life-threatening challenges, being unfairly treated as a whistleblower by multiple actors in concert. One of these actions led to her illegal and unconstitutional confinement at Erie County Medical Center under false pretenses. On the day in question, the plaintiff was harassed, stalked, provoked and trespassed against by defendants, Alicia Flood and Shalonna Watts. This conduct culminated in her unwarranted detention at Erie County Medical Center by co-defendants Crisis Services Inc and E-District officers. The plaintiff was deprived of due process when she was falsely accused of allegations founded on hearsay under an alias name and transported to the Erie County Medical Center CPEP unit based on false, manufactured premises and deprived of substantial civil liberties and Constitutional Rights and harmed.

## CLAIM ONE

12.     On August 29, 2022, the defendants Alicia Flood and Shalonna Watts illicitly obtained the plaintiff's telephone number and direct location, engaged in stalking, harassing, trespassing and provoking the Plaintiff in violation of New York State Penal Laws 240.26. The plaintiff was unjustly compelled to engage in self-defense measures, resulting in intense verbal altercations

against the defendants Flood and Watts upon their emergence from their vehicle at the Plaintiff's designated location of 599 Highgate Avenue, Buffalo New York 14215.

13.     Defendants Crisis Services, who were unknowingly present at the scene for nearly an hour, made the decision to intervene once the defendants E-District arrived. The delay in their intervention led to the plaintiff being exposed to additional trespassers, the plaintiff's son's father who was summoned to the scene of incident by defendant Flood, resulting in further confusion and mental anguish for the plaintiff.

14.     In a concerning turn of events, the plaintiff found herself in a distressing situation when approached by the defendant, E-District officer John Doe. In this juncture, the plaintiff has been facing aggravated harassment by some of these same defendants, E-District officers who were present at the scene. She was coerced with the threat of arrest if she did not comply with undergoing a 9.45 Mental Health Evaluation. This directive originated from the defendants, Crisis Services who never conducted an initial assessment to determine if the plaintiff was mentally ill. Regrettably, both parties involved in this incident neglected to uphold the plaintiff's fundamental Due Process Rights. They failed to provide her with essential information regarding the allegations against her, thereby depriving her of the opportunity to defend herself adequately. Consequently, she was unlawfully detained and transported to the hospital without due consideration for her rights.

15.     Upon uncovering the information in the Crisis Service report and Narrative report, it was later revealed that defendants Flood, Watts, and co-defendants Crisis Services were found to have knowingly, willfully, and intentionally conspired in fabricating false accusations and mental health diagnosis against the plaintiff, including falsely manufacturing a mental health diagnosis in the plaintiff's mother. Their aim was to orchestrate her abduction with the assistance of the defendants, E-District officers and confine her to Erie County Medical Center. Furthermore, defendants Crisis Services made these same accusations in part, to Erie County Child Protection agency, that directly caused the plaintiff to be denied her First Amendment Right of Intimate association with her child(ren) all with the ultimate goal of the conspiracy to kidnap the plaintiff's minor daughter to the custody of co-defendant Flood.

16.    Upon the plaintiff's discharge from Erie County Medical Center and subsequent review of the Crisis Service report and Narrative report, between December 2022 and June 2023, the plaintiff repeatedly filed police reports with the E-District officers  against defendants Alicia Flood and Shalonna Watts regarding their involvement in criminal activities related to the aforementioned incident. The plaintiff was blatantly denied equal protection under the law as their complaints were callously disregarded and dismissed by those responsible for upholding justice.

## STATEMENT OF CLAIM (ONE)

17.    The plaintiff asserts a claim against defendants Alicia Flood and Shalonna Watts for invasion of privacy (both intrusion upon seclusion and public disclosure), intentional infliction of emotional distress, stalking, trespassing, false light invasion of privacy, and defamation per se due to the false accusations made by these defendants, under various provisions in federal law (Privacy Act of 1974), common law torts (Restatement [Second] of Torts). The plaintiff asserts that defendants Flood and Watts engaged in a conspiracy with external parties, including co-defendants present at the scene. This alleged conspiracy led to a violation of the plaintiff's Fourth Amendment right against unreasonable searches and seizures as a direct result of their actions. The plaintiff contends that she was unlawfully detained based on false allegations orchestrated by the defendants and their collaborators with State Actors.

18.    The plaintiff asserts a claim under 42 U.S.C. § 1983 for violations of her constitutional rights by defendants Crisis Service, alleging that they conspired with co- defendants Watts, Flood, E-District officers, and external parties to have her unlawfully detained in a psychiatric ward, exaggerated her symptoms, made false mental health diagnoses, and failed to provide proper initial assessments and interventions. The plaintiff asserts that defendants, Crisis Services helped conspired with the co-defendants at the scene, resulting in direct violation of her Fourth Amendment right against unreasonable searches and seizures by unlawfully having her detained without probable cause. Additionally, they violated her Fourteenth Amendment rights to due

process and Fifth Amendment rights by failing to provide proper notice or explanation for the detention and by fabricating information to justify their actions.

19.     The defendants, E-District officers violating the plaintiff's Fourth, Fifth and Fourteenth Amendment rights by threatening her with arrest for refusing to comply with a mental health evaluation and failing to provide legal justifications that warranted an detainment upon request. Furthermore, failing to provide equal protection under the aforementioned Amendments by neglecting to address credible complaints and take appropriate action to protect the plaintiff from harm and illegal activities. The defendants, E-District officers failed to investigate multiple reports she made about stalking, harassment, trespassing, and false allegations that led to her wrongful placement in a psychiatric ward against defendants Alicia Flood and Shalonna Watts.

20.     The plaintiff further asserts that the actions of defendants, E-District officers violated her constitutional rights under the Fourth and Fourteenth Amendments, resulting in emotional distress, harm to her reputation, loss of liberty due to false imprisonment, and other damages. The failure of law enforcement to investigate her legitimate complaints further exacerbated the situation, leading to unjustified consequences for the plaintiff.

## **PRAYER FOR RELIEF OF DAMAGES FOR CLAIM ONE**

21.     The plaintiff asserts her entitlement to be awarded punitive damages against defendant Alicia Flood and Shalonna Watts in an amount to be determined by a jury; The wrongdoing comprises a conspiracy to make false reports to Suicide Prevention and Crisis Services Inc and John Doe Officer's about the plaintiff's behavior, conduct, and mental state, including manufacturing a false mental health illness in the plaintiff's mother. Additionally, the defendants in this context are accused of harassment and stalking through illicit means, including obtaining the plaintiff's personal information and trespassing on a property she was located at without consent. This malicious act constitutes defamation of character, which is a tort that allows for the recovery of punitive damages under certain circumstances (Restatement (Second) of Torts §617 [1]). Moreover, defendants' harassment and stalking behaviors are egregious violations of the

plaintiff's privacy rights and personal safety. Obtaining personal information illicitly is a clear invasion of privacy (Restatement (Second) of Torts §652D [2]

22.    As a direct result of defendants Flood and Watts actions, the plaintiff suffered compensatory damages as severe mental anguish, intentional infliction of emotional distress, harm to her reputation, loss of liberty due to false imprisonment, constitutional injury, defamation of character and post-traumatic stress disorder in an amount to be determined by the jury;

23.    The plaintiff asserts her entitlement to be awarded punitive damages against defendants Crisis Services in an amount to be determined by a jury; for their collaboration with co-defendants Flood and Watts and suspected external parties to unjustly detain her in a psychiatric ward without proper justification or due process. She asserts that her Fourteenth Amendment rights were infringed upon through the defendant's misrepresentation of her symptoms and fabrication of a mental health diagnosis. The defendants misrepresented the plaintiff's symptoms and fabricated a mental health diagnosis to medical staff at Erie County Medical Center and Erie County Child Protection. The plaintiff further claims that the defendants in this context neglected to conduct an initial assessment prior to subjecting her to a 9.45 evaluation and failed in their duty to intervene promptly, exacerbating her distress and violating their duty of care.

24.    As a direct result of defendants Crisis Services, the plaintiff suffered compensatory damages in severe mental anguish, intentional infliction of emotional distress, harm to her reputation, loss of liberty due to false imprisonment, pain and suffering, constitutional injury, post-traumatic stress disorder, and defamation of character in an amount to be determined by a jury;

25.    The plaintiff asserts her entitlement to be awarded punitive damages against defendants E-District officers for an amount to be determined by a jury; for their collusive actions with co-defendants Flood, Watts, Crisis Services, as well as suspected external parties. These entities conspired to unlawfully confine her in a psychiatric facility without valid justification or adherence to due process. The plaintiff contends that her constitutional rights suffered egregious

violations due to the deliberate negligence or intentional misconduct of law enforcement officials who neglected to investigate and rectify legitimate complaints of criminal behavior lodged on her behalf.

26.    As a direct result of the defendants, E-District officers in violation the plaintiff's constitutional rights under the Fourth and Fourteenth Amendments, she suffered compensatory damages in emotional distress, harm to her reputation, loss of liberty due to false imprisonment, constitutional injury in an amount to be determined by a jury; The failure of law enforcement to investigate her legitimate complaints further exacerbated the situation, leading to unjustified consequences for the plaintiff in mental anguish, and intentional infliction of emotional distress.

## CLAIM TWO

27.    Upon the plaintiff's arrival at Erie County Medical Center/Corporation, she was unlawfully detained in the CPEP waiting area for an excessive period of two hours before being subjected to an alleged 9.45 evaluation or some sort of interview without proper due process. The individuals, defendant's Jane Doe's who conducted the interview identified themselves as a Social Worker of the hospital and a Crisis Service representative. In this critical moment, the plaintiff diligently detailed the sequence of events to defendants, Jane Doe's in a quest for transparency and a clear understanding of why she was unjustly confined. Despite the plaintiff's unwavering honesty, these individuals callously neglected to disclose the rationale behind her confinement, hastily concluding the evaluation within mere minutes.

28.    The following day on August 30, 2022, the plaintiff was forcibly subjected to an unknowingly unauthorized 9.27 evaluation by the defendants, Mark Sutton and Laura Hanrahan. Subsequently, she was involuntarily admitted to the hospital later that night without being provided with informed consent, explicit consent, or due process. Throughout these invasive evaluations, the plaintiff was coerced into recounting the same events in chronological order to both defendants within this context.

29.    Defendants Mark Sutton and Laura Hanrahan interrogated the plaintiff about a non-existent individual named "Kiesha," questioning whether she disclosed information about being pursued by the FBI or harboring suicidal thoughts. The plaintiff vehemently refuted any association with "Kiesha" and affirmed that she neither contemplated suicide nor spread rumors about FBI pursuit. Shockingly, despite the plaintiff's complete lack of awareness regarding the fabricated persona of "Kiesha," it was maliciously uncovered that she had been deceptively utilized as the Collateral Source in the plaintiff's medical records. The defendants Sutton and Hanrahan aggressively interrogated her involvement in connection with the deceit orchestrated by defendant Watts and Crisis Services concerning her son's father on the day of the incident. The plaintiff promptly elucidated the circumstances and detailed her justifications for resorting to self-defense tactics against her son's father.

30.    Upon the plaintiff's documented admission later that evening on August 30th, it came to light that she was prescribed psychiatric medication against her will and refused to take it. The plaintiff then inquired about her prescribed medication intended to address her then recent mold exposure diagnosis, and defendant Jane Doe callously denied her access to it, resulting in it deliberately being withheld throughout her entire hospitalization.

31.    On or about August 31, 2022, the plaintiff uncovered a devious scheme orchestrated by unknown parties who incessantly contacted the hospital staff, falsely asserting authority over the plaintiff's medical care, masquerading as her son's father and former fiancé, advocating for her to remained confined. However, this deception was exposed when the actual son's father contradicted these claims to the medical staff directly.  During this distressing ordeal, the plaintiff was subjected to, yet another evaluation orchestrated by defendants Laura Hanrahan and Nicole Abruzzino. At this critical juncture, the plaintiff was coerced into participating in an interrogation led by defendant Abruzzino under the threat that any refusal would directly obstruct her timely release. The plaintiff diligently recounted the harrowing events in precise chronological order to both defendants on separate occasions. In one instance, defendant Hanrahan callously dismissed the plaintiff's narrative at the end of the assessment, brazenly declaring, "I don't believe a thing you're saying and feel like you're withholding information from me" before abruptly exiting the

room. During the plaintiff's interview with defendant Abruzzino, after she recounted the same events, provided her with a list of individuals whom she explicitly instructed not to communicate with on her behalf. This list notably included co-defendant Alicia Flood and Shalonna Watts.

32.     On or about September 01, 2022, without lawful justification or reasonable cause, the plaintiff was taken into custody and relocated to FiveZoneFour unit at Erie County Medical Center/Corporation. Once within this unit, she came under the control and authority of defendant Julia Ringle without her explicit consent or informed consent.  As a result of this transfer and subsequent detention, the plaintiff was compelled to undergo additional interrogation sessions.

33.     During the initial interviews with the defendant Julia Ringle, the plaintiff detailed the events in chronological order and questioned why she was not released following the conclusion of the interview. Defendant Julia Ringle adamantly insisted on further observation and evaluation of the plaintiff based on false information from fictious collateral sources, despite the plaintiff displaying normal behavior consistently. It was brought to the attention of the plaintiff by another patient that she had the right to request a discharge hearing. Subsequently, a discharge hearing was initiated and formally submitted on September 02, 2022, at the plaintiff's request.

34.     During the period preceding the Mental Health court discharge hearing on September 07, 2022, the plaintiff encountered an issue regarding the whereabouts of her iPhone 12 device. This predicament arose when she required access to her phone to retrieve essential contact information. Defendant Markeith Pridgeon, who had been summoned by the plaintiff via a Jane Doe medical personnel due to his role in managing patients' belongings, reportedly informed the plaintiff that he was experiencing difficulties in locating her phone and was actively engaged in its search. The plaintiff expresses bewilderment regarding the disappearance and untrace ability of her phone over an extended period. The plaintiff's confusion stems from the fact that the phone was securely placed inside her compact purse, which was the sole property she had of her person before being unlawfully detained at the hospital. Days later, defendant Pridgeon suddenly was able to locate the plaintiff's phone and brought it up to the unit where she was located.

35.    It was later revealed upon a thorough investigation, the plaintiff's iPhone 12 device had been unlawfully tampered with and replaced. Following the plaintiff's discharge from Erie County Medical Center/Corporation and upon further examination, she was given a blue iPhone 12 back oppose to her black iPhone 12 she had brought into the hospital with her. The plaintiff's inability to immediately notice the replacement of her phone right away, was attributed to her phone case bearing a striking resemblance. Furthermore, the plaintiff was impeded from accessing her phone fully as a result of the hospital's stringent policy restrictions. Unknown suspects illicitly accessed and assumed complete control over all functionalities of this phone for a duration of nearly two weeks. This breach resulted in the destruction of crucial evidence intended for utilization in a civil action, along with the compromise of her Gmail account, social media profiles, banking applications, location data, as well as the personal identification numbers (PINs) linked to her debit cards and phone, leaving the plaintiff vulnerable to intense stalking, harassment, and elevated fear for her safety.

36.    On September 07, 2022, around the 9:00AM hour, while in anticipation of the plaintiff's Mental Health discharge hearing, the hospital custodians finally addressed the cleanliness of her room and the unit. This action was in direct response to the plaintiff's numerous complaints regarding the unsanitary conditions that had persisted since their transfer to the unit, citing the absence of sanitizing and daily cleaning in the living area as needed. Shortly after, the plaintiff was then escorted by hospital staff to the location of the court proceedings, adjacent to the FiveZoneFour unit. Prior to entering the proceedings area, Jane Doe informed the plaintiff that Judge Hon. Wojtaszek was assigned to preside over the case. The plaintiff, represented by her assigned counsel, was accompanied by her attorney and her son's father, who advocated in support of the plaintiff's release. During a portion of the proceedings, the plaintiff's attorney cross-examined defendant Julia Ringle and challenged her justifications for keeping the plaintiff confined. One of the arguments raised by defendant Ringle was the plaintiff's continued denial of having any connections with the entity named "Kiesha" who was listed as the relative and Collateral Source for the plaintiff. However, the plaintiff's assigned counsel clarified that the sole connection the plaintiff had with a relative named "Kiesha" was one who had passed away almost ten years prior. Additionally, the plaintiff's son's father provided testimony in support of the plaintiff. He confirmed and alluded to the facts that the plaintiff did not pose an imminent

threat to his safety during the date of incident or felt she had any reasons necessitating further confinement. After the witness's testimony, all involved parties in the case actively engaged in the legal proceedings and provided their arguments regarding the matter. Subsequent to no further verbal arguments being presented before the plaintiff, the presiding judge rendered her decision. At this juncture, the plaintiff harbored a strong belief that she heard the judge issue an order for her release, resulting in the plaintiff being escorted back to the unit where she commenced packing her belongings. Shortly thereafter, Joe, a medical professional entrusted with the responsibility of monitoring the unit, approached the plaintiff's room. He informed her that a decision had not yet been reached and that the court was currently in recess. Subsequently, he revisited her room and conveyed the unfortunate news that the judge had denied the plaintiff's discharge in her absence.

37.    During this particular moment, the plaintiff inquired to Joe about any insights regarding the reason for her denied release. Joe's response indicated his lack of involvement or presence during the legal proceedings, as the information was conveyed by an unidentified staff member at the hospital. Subsequently, the plaintiff realized that her personal belongings had gone missing while she was at court. Upon discovering this, she promptly brought it to Joe's attention.

38.    A thorough search was conducted within the unit, encompassing searches in all patients' rooms, yet no trace of the missing items was found. Within the subsequent hour, it was alleged that hospital custodians had re-entered the plaintiff's room to clean and mistakenly assumed her belongings were disposable.

39.    In the course of the plaintiff's case, her belongings were eventually returned to her possession. However, upon inspection, it was revealed that crucial documentation essential for her records and potential legal proceedings had inexplicably vanished. This documentation, serving as a vital paper trail of evidence, was intended by the plaintiff to be safeguarded for her personal use and in anticipation of any future legal matters. A nearby longstanding employee of the hospital, who had firsthand knowledge of the incident in question and other events related to the plaintiff, such as the disappearance of her phone for an extended period and her observable

normal behavior when not under the influence of medication to wit, but not limited to, casually remarked aloud, "somebody's targeting that girl."

40.    On September 08, 2022, the defendant Julia Ringle conducted another evaluation on the plaintiff. During this interaction, defendant Ringle coerced the plaintiff into taking psychotropic medication by offering a release in two weeks in exchange. This occurred despite the plaintiff consistently displaying normal behavior. The defendant justified this action by claiming that the plaintiff lacked poor insight into the reasons for her presence at the facility. However, during this time, the plaintiff was still never properly informed of the allegations against her or given an opportunity to address her lack of knowledge about this fictitious entity named "Kiesha." The Plaintiff, who was facing intense severe mental anguish and emotional distress from being confined against her will, was compelled to take the Risperdal medication at bedtime and experienced adverse effects upon waking up.

41.    The following morning, on September 09, 2022, the plaintiff reported sensations akin to a potential heart attack and described feeling unusual and discomforting bodily sensations upon waking up. The potential side effects and concerns regarding more grave reactions to this psych medication over a two-week period in order to be discharged were significant. As a result, the plaintiff felt compelled to reach out to family members, their appointed attorney, and the Supreme Court building to seek clarification on the final ruling of the court hearing, since the medical personnel were taking unusually long in providing the plaintiff with a copy of the court order as requested.

42.    In this instance, as opposed to the plaintiff being provided with the court order from the hearing, she was handed a copy of a filed petition, requesting Medicine Over Objection. It was then uncovered that the defendant, Paula L. Feroleto, was the actual judge presiding over the case. This information was provided by a chief clerk employee at the Erie County Supreme Court Building.

43.    Moments later, a senior psychiatrist named Dori Marshall forced the plaintiff off the phone in order to conduct a second opinion, before the plaintiff could obtain any further

information regarding the court order and grounds for the ruling. After the plaintiff and Ms.
Marshall's interview was concluded, she was then set for release the same day in the late
afternoon, September 09, 2022.

## STATEMENT OF CLAIM (TWO)

44.     The plaintiff asserts that defendants, Erie County Medical Center, Erie County Medical
Center Corporation, Mark Sutton, Laura Hanrahan, Julia Ringle and Jane and John Doe's held
her in a psychiatric ward against her will without informed consent, explicit consent, or legal
justifications. The plaintiff was subjected to unwarranted and intrusive evaluations under
sections 9.45 and 9.27 without the issuance of a court order or adherence to due process by
defendants Laura Hanrahan and Mark Sutton. Throughout her entire hospitalization, she was not
provided with any explanation for her confinement. Subsequently, it was discovered that the
basis for her confinement stemmed from false hearsay allegations that were purportedly traced
back to a non-existent entity. The plaintiff asserts that defendants, Erie County Medical Center,
Erie County Medical Center Corporation  Mark Sutton, Laura Hanrahan, Julia Ringle, and Jane,
and John Doe's violated her constitutional rights under the Fourth, Fifth, and Fourteenth
Amendments by holding her in a psychiatric ward without informed consent or legal
justifications and was denied access to her medication for mold exposure during her hospital
stay. This action resulted in damage to the plaintiff's mental well-being and caused emotional
distress.

45.     The plaintiff asserts that defendants Erie County Medical Center, Erie County Medical
Center Corporation and Julia Ringle violated their constitutional rights by coercing the plaintiff
into taking psych medication in exchange for a 2-week release, despite the plaintiff not
exhibiting any bizarre behaviors. The plaintiff asserts that defendants Erie County Medical
Center, Erie County Medical Center Corporation and Julia Ringle violated their constitutional
rights under the Fourth and Fourteenth Amendments by coercing the plaintiff into taking psych
medication without proper justification. The actions of these defendants in this context constitute
an infringement on the plaintiff's rights to bodily integrity, personal autonomy, and due process
of law.

46.     The plaintiff is alleging violations against defendants Erie County Medical Center, Erie County Medical Center Corporation and Markeith Pridgeon of their Fourth Amendment rights under the U.S. Constitution, specifically related to unlawful search and seizure, as well as potential violations of their Fourteenth Amendment rights regarding due process and equal protection under the law. The plaintiff asserts that defendants Erie County Medical Center, Erie County Medical Center Corporation and Markeith Pridgeon failed to protect her belongings while she was under their care, leading to the violation of her constitutional rights. The unauthorized access to her personal property and theft of crucial documentation further exacerbated the harm caused by these actions.

47.     The plaintiff alleges a violation of her procedural due process rights under the 14th Amendment against defendant Paula L Feroleto. The claim asserts that the denial of discharge without providing the plaintiff with an opportunity to be present during this portion of the court proceedings infringed upon her right to be heard and participate in decisions affecting her liberty interests. The plaintiff asserts that the actions taken by the defendant, Feroleto, denying discharge without allowing her presence during court proceedings constitute a violation of her constitutional rights under the 14th Amendment.

## **PRAYER FOR RELIEF OF DAMAGES FOR CLAIM TWO**

48.     The plaintiff should be awarded punitive damages against defendants Erie County Medical Center, Erie County Medical Center Corporation, Mark Sutton, Laura Hanrahan, Julia Ringle, and John and Jane Doe in an amount to be determined by the jury; for their alleged involvement in a conspiracy to violate the plaintiff's rights. The plaintiff contends that the defendants unlawfully and unconstitutionally detained her without valid legal justification or reasonable grounds. see Trezevant v City of Tampa, 741 F. 2d 336 and 18 USC 1201 where damages were awarded $1,565,217.39 per day of unlawful detainment.

49.     As a direct result of the defendant's actions, the plaintiff suffered compensatory damages in constitutional injury, severe mental anguish, intentional infliction of emotional

distress, pain and suffering, bodily harm, loss of liberty due to false imprisonment, loss of intimate association with her children, post-traumatic stress disorder, loss of quality of life and loss of enjoyment in life in an amount to be determined by the jury;

50.     The plaintiff should be awarded punitive damages against defendants Erie County Medical Center, Erie County Medical Center Corporation, and Jane and John Doe's in an amount to be determined by a jury; for their actions of withholding of the plaintiff's medication, leading to a complete denial of access throughout the entire hospitalization process.

51.     As a result of the defendant's actions, the plaintiff's suffered compensatory damages in an amount to be determined by a jury; for her medical treatment being prolonged where she suffered symptoms that were meant to subside the effects of the illness.

52.     The plaintiff should be awarded punitive damages against defendants Erie County Medical Center, Erie County Medical Center Corporation, Markeith Pridgeon and Jane and John Doe's in an amount to be determined by a jury; The plaintiff alleges that the defendant failed to protect her belongings while she was under their care. Furthermore, it is claimed that the defendants conspired with external parties to gain unauthorized access to her phone, resulting in severe compromise and replacement of the device. This unauthorized access led to intensified gang stalking and mental attacks against the plaintiff. As a result of these actions, the plaintiff experienced the loss of her phone. Additionally, the theft of crucial documentation that was never recovered was where this incident occurred while the plaintiff was attending Mental Health court, further exacerbating the harm caused by the defendants' actions.

53.     As a direct result of defendants Erie County Medical Center, Erie County Medical Center Corporation, Markeith Pridgeon and Jane and John Doe's the plaintiff suffered compensatory damages in an amount to be determined by a jury; in Constitutional injury, Mental anguish, Intentional infliction of emotional distress, loss of privacy, fear for one's safety, intangible losses incurred due to the invasion of privacy and increased risk of stalking and post traumatic stress disorder.

54.     The plaintiff should be awarded punitive damages against defendant Paula L. Feroleto, in an amount to be determined by a jury; based on the denial of the plaintiff's right to be heard and participate in decisions affecting her liberties.

55.     As a direct result of the defendant Paula L. Feroleto actions, the plaintiff suffered compensatory damages in Constitutional injury and prolonged loss of liberty due to the false imprisonment.

## **CLAIM THREE**

56.     On June 22, 2023, the plaintiff participated in further proceedings on an Article 10 Neglect petition, at Erie County Family Court, which unbeknownst to them, turned out to be a non-jury trial concerning their daughter. Prior to this event, on March 3rd, 2023, the plaintiff was contacted by Vernita Thompson, an Erie County CPS agent. During the discussions between Ms. Thompson and the plaintiff, it was communicated that the plaintiff's daughter was at risk of being removed from her father's home. This potential removal stemmed from an alleged six-month investigation that had concluded her investigation against the indicated father. Ms. Thompson further communicated to the plaintiff that her daughter only has 2 options of placement and that will be either through defendant Alicia Flood or through the foster care system. Despite the plaintiff expressing their concern to Ms. Thompson that defendant Alicia Flood posed a conflict of interest and requested that she bring her daughter to the plaintiff's current residence instead. However, Ms. Thompson disregarded this request and employed unlawful, unconstitutional tactics that ultimately resulted in the plaintiff's daughter being placed under the care of defendant Flood.

57.     In the course of the hearing, the plaintiff, who was deemed pro se on the record that day, was not afforded the opportunity to adequately prepare for the proceedings. At this critical juncture, Vernita Thompson and their appointed counsel, Amy Inzina, summoned the defendant, Nicole Abruzzino, to provide testimony against the plaintiff.

58.     Prior to defendant Abruzzino taking the stand, Amy Inzina engaged in discussions and
presented defensive arguments insinuating that the plaintiff posed a safety risk to her daughter.
These objections were made to prevent the plaintiff's daughter from being released into her
custody. Inzina's arguments were based on the fraudulent diagnoses and behavioral assessments
provided by defendants Suicide Prevention and Crisis Services. The reports from Suicide
Prevention and Crisis Services indicated that the plaintiff was diagnosed with a bipolar disorder,
which was then communicated to Erie County Child Protection stemming from the August 29,
2022 incident.

59.     Upon taking an oath, defendant Abruzzino proceeded to fabricate a fictitious and
misleading account concerning the plaintiff's behavior, actions, and mental health status during
their involuntary commitment at Erie County Medical Center. Defendant Abruzzino alluded to
the narrative, that the plaintiff orchestrated a plan to get herself admitted into CPEP for SSI
benefits. She further narrates an account that the plaintiff was exhibiting erratic and bizarre
behavior.

60.     The plaintiff then had the opportunity to cross examine Abruzzino about a list of names
she had provided to her at the hospital, asking her to read back each name. In this exchange,
defendant Abruzzino correctly identified all names except for Defendant Alicia Flood's. She
deliberately mispronounced Flood's name to an unrecognizable degree, thereby shielding Flood
in this matter.

61.     In or around July 2023, the plaintiff became aware that an Order to Show Cause hearing
had occurred concerning the plaintiff's medical records from Erie County Medical Center on
approximately May 25, 2023. The plaintiff, who was not given the opportunity to participate in
the proceedings or voice any objections on the record to protect her privacy, experienced the
disclosure of her records to third parties under the authority of defendant Laura Fleming, the
privacy officer at Erie County Medical Center. In return, defendant Laura Fleming failed to
fulfill her obligation to provide the plaintiff with the opportunity to exercise her due process
rights. Specifically, defendant Laura Fleming neglected to initiate contact with the plaintiff,
thereby depriving the plaintiff of her right to object to the disclosure of these records to

individuals known to be involved in criminal activities. This failure on the part of the defendant resulted in a violation of the plaintiff's constitutional rights under the due process clause.

62.     On or about July 27, 2023, the plaintiff was forced to observe these records under the custody and control of Vernita Thompson, before being turned over to the custody of the presiding judge. Consequently, the plaintiff was subjected to further discrimination and extended separated from her daughter. This separation was ultimately justified based on the defamatory and deceitful content found within the plaintiff's Erie County Medical Report, accompanied by the involvement of all defendants.

63.     On or around January of 2024, the plaintiff filed for an amendment and addendum to her medical records pertaining to her involuntarily commitment at Erie County Medical Center/Corporation. The request was made in the effort to ensure complete transparency and rectify inaccuracies that were substantiated by evidence, after having the opportunity to obtain her full medical file in October of 2023.

64.     In April of 2024, Erie County Medical Center/Corporation sent a final decision to the plaintiff and informed her that her request had been denied. The denial was attributed to the fact that none of the physicians or treating doctors were currently employed at the facility. Subsequently, it was revealed that all the doctors, with the exception of Julia Ringle, were still employed at the facility. Julia Ringle had transitioned to a new position at BestSelf Behavioral Health Inc.

## **STATEMENT OF CLAIM (THREE)**

65.     The plaintiff asserts that defendant Nicole Abruzzino committed perjury by providing false testimony under oath, which led to damaging consequences for the plaintiff, including misrepresentation of behavior, mental health status, and a fabricated narrative about admission to a psychiatric ward for Social Security benefits. Additionally, Abruzzino intentionally distorted the name of a criminal to obstruct justice, defendant Flood in this matter and conspired with the plaintiff from regaining custody of her daughter from child protection services. The plaintiff further asserts that defendant Nicole Abruzzino's perjury, misrepresentation, obstruction of justice, and conspiracy have violated their constitutional rights under the Fourth Amendment

(protection against unreasonable searches and seizures) and Fourteenth Amendment (due process and equal protection clauses).

66.     The plaintiff asserts that defendant Laura Fleming, the privacy officer at Erie County Medical Center/Corporation, violated the Plaintiff's privacy rights under HIPAA by disclosing their medical records to third parties without their consent and refused to amend and make an addendum to their medical records, which were based on substantial evidence. This matter extends in a violation of the plaintiff's constitutional rights under the due process clause.

## PRAYER FOR RELIEF OF DAMAGES FOR CLAIM THREE

67.     The plaintiff should be awarded punitive damages against defendant Nicole Abruzzino in an amount to be determined by a jury; for perjury, misrepresentation, obstruction of justice, and conspiracy that resulted in violating their constitutional rights under the Fourth Amendment.

68.     As a direct result of defendant's Abruzzino's actions, the plaintiff suffered compensatory damages in defamation, emotional distress, interference with custody rights, and constitutional injury in an amount to be determined by a jury;

69.     The plaintiff should be awarded punitive damages against defendant Laura Fleming in an amount determined by a jury;  for breaching her duty under HIPAA regulations and violating the Plaintiff's right to privacy by disclosing their medical records without consent and refusing to amend them based on substantial evidence. The Plaintiff is entitled to damages or relief under 42 U.S.C. § 1320d-6(a)(1)(C) and (D) of HIPAA for both instances of violation.

70.     As a direct result of defendant Laura Fleming actions, the plaintiff  suffered compensatory damages in Constitutional Injury, intentional infliction of emotional distress, interference with custody rights and mental anguish in an amount to be determined by a jury;

**Certification and Closing** Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being

presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _June 11, 2024_

_____
Signature of Plaintiff

Zakkiyya Carter
_____
Printed Name of Plaintiff